THE STATE OF KANSAS, ex rel. JOHN S. DAWSON, as Attorney-general, etc., *Plaintiff*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., *Defendants*.

No. 17,598.

HEADNOTE BY THE REPORTER.

1. GRAIN INSPECTION—*Fees Collected—Costs.* This court has no authority to order the payment of costs in *The State, ex rel., v. Railway Co.*, ante, p. 348, for which the state is liable out of the money collected and in the hands of the clerk.

2. —— *Order of Distribution.* The clerk will pay to the state treasurer the fees collected from the five elevators indicated in the opinion for services rendered prior to December 6, 1911, and will return the other fees to the persons who paid them.

Original proceeding in mandamus. Opinion filed July 6, 1912. Order directing distribution of money in the hands of the clerk. (For original opinion and list of attorneys, see *ante*, p. 348.)

*Per Curiam:* This proceeding having been brought to determine under what circumstances the state grain department could inspect grain at the cost of the owner without his consent, an order was made that in doubtful cases the inspection fees should be deposited with the clerk of this court to await the decision of the question. The court decided that five of the elevators were operated as public warehouses until December 6, 1911, and were liable for inspections made prior to that time, but that otherwise the defendants were not liable for inspection charges. (*The State, ex rel., v. Railway Co.,* ante; pp. 348, 365, 124 Pac. ——.) It follows that the fees collected from these five elevators for inspections made prior to December 6, 1911, belong to the state, and that the other fees collected belong to the persons who paid them.

We are asked to order that the money in the hands of the clerk belonging to the state be appropriated, so far as necessary, to the payment of the costs of the case for which the state is liable. We think such an order would be beyond our authority. The statute provides that all fees collected for grain inspection shall be turned into the state treasury, forming a fund which has been appropriated by the legislature to the payment of the expenses of the grain department. (Laws 1911, ch. 199, §§ 2, 3.) The clerk of the court was made the temporary custodian of the money collected to insure its being paid to the persons found to be entitled to it. The court has no control over it except to see that such purpose is carried out. The costs of this litigation, so far as they fall upon the plaintiff, may properly be regarded as expenses of the department, but payment from the revolving fund can be made only upon vouchers verified by the chief inspector. It is unfortunate that those who are entitled to fees for services rendered in the case, for which the state is liable, must submit to delay in receiving what is justly

The State, *ex rel.*, v. Railway Co.

due them, but the hardship results from the necessities of the case.  Payment of the state's obligations can only be made as provided by statute, and since no specific appropriation has been made covering these expenses, the persons entitled to the fees must await the further action of the legislature, unless arrangement can be made for their payment from the contingent fund of the department, or from some other contingent fund already appropriated.

In some instances fees have been collected from the owners for compulsory inspection of grain which has passed into other hands and afterwards gone into a public elevator, being received there upon the prior inspection.  It has been suggested that in such cases the fees should be turned into the state treasury.  We think, however, that as the fees were collected without authority of law they should be returned to the person from whom they were received, leaving the state to settle with the managers of the elevators.

It is said that in some instances the owner of grain which has been inspected over his objection has derived an advantage from the certificate of inspection.  The suggestion is made that in such case the fee ought not to be returned to him, and that to cover this situation the fees in the hands of the clerk should be refunded only upon the surrender of the certificates.  The collection of doubtful fees was allowed with the understanding that so far as they were unauthorized they should be returned.  No condition was made that the certificates of inspection should be preserved or surrendered, and in the absence of a prior notice of such a requirement we do not think it could justly be insisted upon at this time.

The clerk will pay to the state treasurer the fees collected from the five elevators indicated in the opinion for services rendered prior to December 6, 1911, and will return the other fees to the persons who paid them.